IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 8, 2018

## IN RE NAKAYIA S. ET AL.

**Appeal from the Juvenile Court for Jackson County**
**No. 2017-JV-11      Tiffany Gipson, Judge**

_____

### No. M2017-01694-COA-R3-PT

_____

Father appeals the juvenile court's judgment terminating his parental rights to two of his children. We conclude that DCS did not provide Father with a reasonable amount of time to comply with the permanency plan requirements and the record does not contain clear and convincing evidence to terminate his rights on this ground. Further, we conclude that the juvenile court's order fails to comply with Tennessee Code Annotated section 36-1-113(k)'s requirement that the court make specific factual findings, which precludes our review of the remaining grounds and the best-interests determination. Therefore, we vacate the judgment of the juvenile court and remand for entry of an order that complies with subsection 113(k).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Vacated and Remanded.**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which RICHARD R. DINKINS and ARNOLD B. GOLDIN, JJ., joined.

Kayla Collins Cantrell, Gainesboro, Tennessee, for the appellant, Eric S.[1]

Herbert H. Slatery, III, Attorney General and Reporter; and Brian Allan Pierce, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Children's Services.

_____

[1] This court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

**OPINION**

Nakaiya S. and Nevaeh S.[2] (collectively, "the Children") were three and four years old, respectively, when their mother, Veronica S. ("Mother"), was arrested on July 31, 2015, for driving under the influence with the Children in the car. At the time of Mother's arrest, the Children's legal father, Eric S. ("Father"), was incarcerated in Minnesota and the purported biological father of Nevaeh, Andrew W., was residing in Ohio.[3] Consequently, the Juvenile Court for Jackson County placed the Children into the custody of the Tennessee Department of Children's Services ("DCS"). Several months later, the court declared the Children dependent, neglected, and victims of severe child abuse perpetrated by Mother.

In February 2016, Father was released from prison and placed on parole in Indiana. Father's parole requirements prohibited him from leaving the state. Nonetheless, Father contacted DCS and requested custody of the Children. Father explained that he had been incarcerated for violating a protection order related to domestic violence against Mother, but said that he had received a psychological and parenting assessment while incarcerated. Father said the assessment provider recommended he attend counseling after his release.

Shortly thereafter, DCS requested approval to place the Children with Father under the Interstate Compact on the Placement of Children ("ICPC"), Tennessee Code Annotated § 37-4-201 to -207, and Father participated in developing a family permanency plan. The plan required Father to complete several action steps: (1) authorize DCS to obtain his background information and talk with his probation officer; (2) cooperate in the ICPC process with DCS and other agencies; (3) follow DCS's recommendations regarding interaction with the Children; (4) keep in contact with DCS; (5) promptly inform DCS of any changes in his circumstances, including housing, income, and legal status; (6) provide DCS with a copy of his assessment record from prison; (7) follow recommendations relating to counseling and medication; (8) "work on getting insurance"; (9) authorize "providers" to release information to DCS; (10) resolve any pending criminal charges; and (11) refrain from further illegal activity.

However, after agreeing to the permanency plan, Father informed DCS he could

---

[2] The caption in the underlying proceedings incorrectly spells Nevaeh's name as "Neveah." The caption to this proceeding incorrectly spells Nakaiya's name as "Nakayia."

[3] A third child, Brantley D., was born in May 2016, while Father and Mother were married, but Mother's boyfriend, Andrew D., was identified on the birth certificate as Brantley's father.

not obtain his assessment records because the records had been destroyed. Consequently, DCS caseworker Sarah Halliburton told Father that DCS would have to set up another assessment. Around the same time, Indiana denied DCS's ICPC request because of an outstanding arrest warrant for Father in Putnam County, Tennessee.

In June 2016, Father participated in developing a second permanency plan. The second plan required Father to complete only four action steps: (1) authorize DCS to obtain his background information; (2) continue to cooperate with DCS and other agencies; (3) continue to follow DCS recommendations regarding interaction with the Children; and (4) continue to keep in contact with DCS and inform it of any changes in his circumstances.

When Father's parole ended in September 2016, Father returned to Tennessee to surrender himself to Putnam County authorities to resolve his outstanding arrest warrant. In December 2016, while Father was serving a four-month sentence in the Putnam County jail, DCS developed a third permanency plan without Father's participation or agreement. For reasons unexplained by the record, this plan was not approved by the juvenile court until four months later, on April 4, 2017.

As it relates to this appeal, the third plan included two new action steps for Father to complete by June 28, 2017: (1) submit to and follow the recommendations of a psychological and parenting assessment; and (2) obtain and maintain safe, appropriate housing.

On February 7, 2017, which was before the third plan was approved by the juvenile court, DCS filed its Petition for Termination of Parental Rights, seeking to terminate the rights of Mother, Father, and Andrew W.

Subsequently, Putnam County released Father from jail, and Ms. Halliburton met with Father. Ms. Halliburton gave Father a copy of the third permanency plan and explained his responsibilities to him. After meeting with Ms. Halliburton, Father requested a second ICPC evaluation and then returned to Indiana. Sometime between February and May 2017, Indiana denied the second ICPC evaluation because Father was living in a one-bedroom apartment with another person.

In May 2017, DCS transferred the Children's case from Ms. Halliburton to Family Services Worker Malissa Mayberry. The same month, Father obtained insurance, and a psychological assessment was scheduled.[4] On June 13, 2017, Father attended the

---

[4] The record does not indicate whether the assessment was scheduled by DCS or Father.

assessment. The next day, Ms. Mayberry called and confirmed his attendance. On June 27, 2017, Father told Ms. Mayberry he was living in an apartment by himself and requested a third ICPC evaluation. However, Ms. Mayberry responded that a team meeting would need to take place before DCS would start the ICPC process a third time. The ICPC evaluation never occurred and, due to the psychological-assessment provider's error, Ms. Mayberry did not receive a copy of the assessment until the morning of the final hearing on DCS's Petition to Terminate, July 18, 2017.

The case was tried on July 18, 2017, and, on July 25, 2017, the juvenile court entered an order terminating Father's, Mother's, and Andrew W.'s parental rights to the Children. This appeal by Father followed; neither Mother nor Andrew W. appeal.

Father contends the juvenile court erred in finding (1) that grounds existed for terminating his rights and (2) that terminating his rights was in the Children's best interests.

## STANDARD OF REVIEW

"To terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). Additionally, trial courts must make specific findings of fact and conclusions of law. Tenn. Code Ann. § 36-1-113(k). Specific findings of fact and conclusions of law "facilitate appellate review and promote just and speedy resolution of appeals." *In re Audrey S.,* 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005). When a trial court fails to comply with this requirement, appellate courts "must remand the case with directions to prepare the required findings of fact and conclusions of law." *Id.*

We review a trial court's findings of fact de novo upon the record "accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). However, the heightened burden of proof in termination proceedings requires this court to make its own determination "as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *In re Carrington H.*, 483 S.W.3d 507, 524 (Tenn. 2016); *In re Bernard T.*, 319 S.W.3d 586, 596–97 (Tenn. 2010). A trial court's ruling regarding whether the evidence sufficiently supports termination is a conclusion of law, which we review de novo with no presumption of correctness. *See In re Carrington H.*, 483 S.W.3d at 524.

ANALYSIS

The juvenile court found five grounds existed for terminating Father's parental rights: (1) abandonment for failure to visit; (2) abandonment for failure to support; (3) abandonment by wanton disregard; (4) substantial noncompliance with the permanency plan; and (5) failure to manifest an ability and willingness to assume legal and physical custody.

DCS concedes two grounds on appeal: abandonment for failure to visit and abandonment for failure to support.[5] Thus, the juvenile court's determination as to each of these two grounds is reversed. *See In re Brandon T.*, No. M2009-02459-COA-R3-PT, 2010 WL 3515677, at *2 (Tenn. Ct. App. Sept. 8, 2010) ("We consider those grounds not addressed by either DCS or the guardian ad litem on appeal to be waived."). That leaves three grounds to consider, which we address in turn as follows.

I.     GROUNDS FOR TERMINATION

A.     Substantial Noncompliance

The juvenile court found that Father was in substantial noncompliance with the permanency plan's statement of responsibilities because Father failed to provide proof that he obtained suitable housing in a timely manner and failed to follow up on the psychological assessment's recommendations.

Courts may terminate a parent's parental rights when "[t]here has been substantial noncompliance by the parent . . . with the statement of responsibilities in a permanency plan . . . ." Tenn. Code Ann. § 36-1-113(g)(2). To support a finding on this ground, the statement of responsibilities must meet two substantive requirements: (1) the statement must "include the responsibilities of each party in specific terms," and (2) the responsibilities must "be reasonably related to the achievement of the [permanency plan's] goal." Tenn. Code Ann. § 37-2-403(a)(2)(A). A permanency plan's failure to state a parent's responsibilities in concrete terms precludes a finding that the parent failed to comply with those responsibilities. *See In re Navada N.*, 498 S.W.3d 579, 604 (Tenn. Ct. App. 2016) (citing *In re Abigail F.K.*, No. E2012-00016-COA-R3-JV, 2012 WL 4038526, at *13 (Tenn. Ct. App. Sept. 14, 2012)). Additionally, the "trial court must find that the requirements of a permanency plan are 'reasonable and related to remedying the

---

[5] At trial, DCS informed the juvenile court that it was not pursuing the ground of abandonment by failure to establish a suitable home as to Father. Consequently, DCS has waived the ground on appeal. *See In re Marr*, 194 S.W.3d 490, 497 (Tenn. Ct. App. 2005) (concluding that the father waived an argument by "failing to raise it in the trial court in the first instance[.]") (footnote and citations omitted).

conditions which necessitate foster care placement'. . . in conjunction with the determination of substantial noncompliance under § 36–1–113(g)(2)." *In re Valentine*, 79 S.W.3d at 547 (quoting Tenn. Code Ann. § 37-2-403(a)(2)(C)). "Terms which are not reasonable and related are irrelevant, and substantial noncompliance with such terms is irrelevant." *Id*. at 548–49. If the trial court fails to make this finding, appellate courts review the issue de novo. *Id.* at 547.

The December 2016 permanency plan included the housing and psychological-assessment requirements in specific terms. The final order, however, failed to include a determination on whether these requirements were reasonable and related to remedying the conditions that necessitated the Children's foster care. While we conclude that the requirements were related, *see State, Dep't of Children's Servs. v. T.M.B.K.*, 197 S.W.3d 282, 294 (Tenn. Ct. App. 2006) (holding that psychological evaluation and suitable housing requirements were "reasonable requirements for someone with a history of domestic violence"), we find the requirements were unreasonable because the juvenile court did not ratify the third permanency plan until two months after DCS filed its Petition to Terminate.

This court addressed similar circumstances in *In re J.L.E.*, where DCS moved to terminate a mother's rights "well short of the time allowed by the Permanency Plan" for her to complete the assigned responsibilities. No. M2004-02133-COA-R3-PT, 2005 WL 1541862, *14 (Tenn. Ct. App. June 30, 2005), *overruled by In re Kaliyah S.*, 455 S.W.3d 533 (Tenn. 2015). In that case, DCS prepared a permanency plan without the participation of the mother in July 2003, and the juvenile court approved the plan in August 2003. *Id*. at *3. The expected achievement date for the mother's responsibilities was ten months later, in June 2004. *Id*. Nonetheless, DCS filed a petition to terminate the mother's parental rights in January 2004, and the juvenile court entered an order granting the petition in July 2004. *Id*. at *4, 5. The court found, *inter alia*, that the mother was in substantial noncompliance with the permanency plan's statement of responsibilities. *Id*. at *5. On appeal, we reversed the trial court's finding on this ground, based in part on the fact that the period provided for the mother to achieve her responsibilities was significantly abbreviated. *Id*. at *13. We explained,

> This court has expressed its concern about DCS moving to terminate a parent's rights well short of the time allowed by the Permanency Plan for the parent to complete the responsibilities assigned to him or her, absent intervening or extraordinary circumstances. Those concerns are based on the fundamental unfairness inherent in providing the parent with notice of one set of expectations and acting inconsistently with that notice.

*Id*. at *14 (internal citation omitted).

While the issue in *In re J.L.E.* was whether DCS made reasonable efforts to assist the mother,[6] the principles guiding our decision apply equally to circumstances such as the one before us. DCS did not include the housing and assessment requirements in a permanency plan until December 2016, when DCS developed the third plan with an expected achievement date of June 28, 2017. DCS developed the plan without Father's participation, and he was not given a copy until after DCS filed its petition in February 2017. Further, there is no evidence that Father agreed to the plan and the juvenile court did not approve it until April 2017—four months after DCS developed the plan and a mere three months before the court held its final hearing on the termination petition. While Ms. Halliburton testified that she verbally communicated the assessment requirement to Father in February of 2016, it is axiomatic that noncompliance with a permanency plan's statement of responsibilities requires that the alleged noncompliance be based on a requirement *in* the statement of responsibilities. The first plan required Father to follow "recommendations" related to counseling, and the second plan required no psychological assessment or counseling.

Because Father did not agree to the third permanency plan, Father had no obligation to complete the requirements until the juvenile court ratified it on April 4, 2017. Thus, we find it was unreasonable to expect Father to comply with these requirements before the final hearing. Consequently, Father's noncompliance with the housing and psychological-assessment requirements is irrelevant to the substantial noncompliance determination. For this reason, we disagree with the juvenile court's finding that clear and convincing evidence existed for terminating Father's parental rights for substantial noncompliance with the permanency plan's statement of responsibilities. Therefore, we reverse the juvenile court's judgment on this ground.

### B. Failure to Manifest an Ability and Willingness to Assume Custody

The juvenile court held that Father failed to manifest an ability and willingness to assume custody of and responsibility for the Children because he did not appear in person at the final hearing, did not maintain consistent contact with DCS, and did not "step up" to ask what he could do to get the Children back. However, we cannot review the court's judgment on this ground because the final order contained insufficient findings.

A parent's parental rights may be terminated if parent has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical

---

[6] In *In re Kaliyah S.*, 455 S.W.3d at 555, the Tennessee Supreme Court held that "proof of [DCS's] reasonable efforts is not a precondition to termination of the parental rights of the respondent parent."

custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child. Tenn. Code Ann. § 36–1–113(g)(14). "As to the first prong, the statute requires the party seeking termination to prove a negative: that the parent failed to manifest an ability *and* willingness to personally assume legal and physical custody or financial responsibility of the child." *In re Ayden S.*, No. M2017-01185-COA-R3-PT, 2018 WL 2447044, at *7 (Tenn. Ct. App. May 31, 2018).

Here, the order did not make separate findings on Father's ability *and* willingness to assume custody of and responsibility for the Children. Moreover, the court made no findings regarding why placing the Children back in Father's custody would risk substantial harm to their welfare. Consequently, we must reverse the juvenile court's judgment on this ground as to Father and remand the issue for the juvenile court to prepare findings of fact and conclusions of law as required by Tennessee Code Annotated § 36-1-113(k).

## C.     Wanton Disregard

Although the juvenile court concluded that Father engaged in conduct exhibiting a wanton disregard for the Children's welfare, the court made no factual findings to support its conclusion. Therefore, we must reverse the court's judgment on this ground as to Father and remand the issue for the juvenile court to prepare findings of fact and conclusions of law as required by Tennessee Code Annotated § 36-1-113(k).

## II.     BEST INTERESTS

If one of the statutory grounds for termination is proven by clear and convincing evidence, a parent's rights may be terminated if termination is in the best interests of the child. *In re Heaven L.F.*, 311 S.W.3d at 440; *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003). In making that determination, "[t]he child's best interests must be viewed from the child's, rather than the parent's, perspective." *In re Audrey S.*, 182 S.W.3d at 878. This inquiry requires courts to weigh the evidence regarding the statutory factors listed in Tenn. Code Ann. § 36-1-113(i) as well as the evidence about any other relevant factors. *See id.* The relevancy and weight of each factor depends upon the unique facts of each case. *Id.*

Although we have already determined that this matter must be remanded on other grounds, in the interest of judicial efficiency, we will address the court's findings on whether terminating Father's rights is in the Children's best interests. The best-interests analysis in the final order recites verbatim the allegations in DCS's petition. These allegations contain no discussion or elaboration to support their conclusions. We recently cautioned against such practice, which calls into question whether "the order was the result of the court's 'own considered conclusions.'" *In re Atrivium K.*, No. M2017-

01046-COA-R3-PT, 2018 WL 4037414, at *3 n. 4 (Tenn. Ct. App. Aug. 23, 2018) (quoting *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 315 (Tenn. 2014)). As we explained in *Atrivium K.*:

> The order terminating Mother's rights, however, does not satisfy the court's responsibility imposed by Tennessee Code Annotated section 36-1-113(k). The order, entered the same day as the hearing, is largely a verbatim recitation of the allegations contained in the petition for termination; the order's "findings" relative to both the grounds for termination and the best interest determination appear to have been cut and pasted from the petition and contain no discussion or elaboration beyond the allegations of the petition. The hearing transcript shows that the court rendered its decision immediately after declaring the proof closed and hearing summation from counsel; the oral ruling consisted of conclusory statements that the various grounds for termination had been established and that termination was in the best interest of the children. Indeed, counsel for the Department announced at the conclusion of the oral ruling that an order terminating Mother's rights had already been prepared; it was entered that day.

*In re Atrivium K.*, 2018 WL 4037414, at *3. We recognize the economic benefit of utilizing party-prepared orders, but the interests of economy cannot serve as a substitute for a judge's independent determination.

Accordingly, we reverse the juvenile court's judgment on best-interests and remand for the court to make specific findings of fact and conclusions of law in compliance with Tennessee Code Annotated § 36-1-113(k) that represent the juvenile court's independent judgment. *See In re Atrivium*, 2018 WL 4037414, at *3; *see also Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d at 315.

### IN CONCLUSION

For the foregoing reasons, the judgment of the juvenile court terminating the parental rights of Father is vacated, and this matter is remanded with instructions for the juvenile court to make specific findings of fact and conclusions of law in compliance with Tennessee Code Annotated § 36-1-113(k). Costs of appeal are assessed against the Department of Children's Services.

_____
FRANK G. CLEMENT JR., P.J., M.S.